IRVINE v. NEW YORK EDISON CO.

(Supreme Court, Appellate Division, First Department.   March 10, 1911.)

1. CORPORATIONS (§ 590*)—MERGER—CONSIDERATION—PRESUMPTION.
    On the assignment of all the property, including the franchise, of a corporation to another corporation, it must be assumed, in the absence of proof, that full value was paid, and that no obligation was imposed on the purchasing corporation, in the absence of agreement to the contrary, to pay the debts of the selling corporation.

    [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2364; Dec. Dig. § 590.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. CORPORATIONS (§ 590*)—MERGER—STATUTORY PROVISION — LIABILITIES OF MERGED CORPORATION.

Under Stock Corporation Law (Laws 1896, c. 932) § 58, authorizing any stock corporation lawfully owning all the stock of another stock corporation engaged in a similar business to merge the latter, "but without prejudice to any liabilities of the other corporation or the rights of any creditor thereof," the proviso simply preserves the rights of creditors of the merged corporation to maintain an action against it, and if a recovery be had, and the judgment not paid, then to recover assets transferred if full value were not paid therefor.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2364; Dec. Dig. § 590.*]

3. CORPORATIONS (§ 590*)—MERGER—STATUTORY PROVISION — LIABILITIES OF MERGED CORPORATION.

Under Stock Corporation Law (Laws 1896, c. 932) § 58, authorizing any stock corporation lawfully owning all the stock of another stock corporation engaged in a similar business to merge the latter, the possessor corporation does not, by the merger alone, regardless of the assets received from the merged corporation, assume the liabilities of the latter so as to be liable in action at law to its creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2364; Dec. Dig. § 590.*]

4. CORPORATIONS (§ 590*)—CONSOLIDATION — LIABILITIES OF ORIGINAL CORPORATION.

Under Business Corporation Law (Laws 1892, c. 691) § 12, providing that the right of creditors of any corporation consolidated with others shall not be impaired by the consolidation, but the new corporation shall succeed to all liabilities of each of the corporations consolidated, where a debtor corporation is merged in another and the possessor corporation becomes consolidated with others, where the possessor corporation has not assumed an obligation of the debtor corporation, the consolidated corporation is not made liable therefor.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2364; Dec. Dig. § 590.*]

Scott, J., dissenting.

Appeal from Trial Term, New York County.

Action by Frederick B. Irvine against the New York Edison Company. From a judgment dismissing the complaint at the close of plaintiff's case and from an order denying a new trial, plaintiff appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and MILLER, JJ.

Martin S. Lynch, for appellant.
Edward W. Hatch, for respondent.

McLAUGHLIN, J. This action is brought to recover the amounts paid by the plaintiff's assignor, the accommodation maker and indorser, upon a note made and indorsed for the benefit of the Block Lighting & Power Company, a domestic corporation, which in February, 1900, was merged into another domestic corporation, the New York Gas, Electric Light, Heat & Power Company, pursuant to section 58 of the then stock corporation law. Laws 1892, c. 688, as added by Laws 1896, c. 932. The latter company was subsequently consolidated with the Edison Electric Illuminating Company of New York;

its name being thereafter changed to the New York Edison Company. This action was brought upon the theory that the defendant is liable for the debts of the Block Lighting & Power Company, which was primarily liable upon the note which the plaintiff's assignors were compelled to pay. Upon the trial the complaint was dismissed at the close of plaintiff's case and from the judgment entered to that effect, and from an order denying a motion for a new trial plaintiff appeals.

It appears that on the 13th of December, 1898, the Block Lighting & Power Company assigned and transferred all of its property, including its franchise, to a domestic corporation known as the Manhattan Lighting Company and both of these corporations were on the 1st of February, 1900, merged into and became the New York Gas, Electric Light, Heat & Power Company. It does not appear what was paid for the property and franchise transferred, but, in the absence of proof upon the subject, it must be assumed that full value was paid, and that no obligation was imposed upon the Manhattan Company, in the absence of an agreement to the contrary, to pay the debts or obligations of the Block Lighting & Power Company. Klein v. East River Electric Light Co., 182 N. Y. 27, 74 N. E. 495; Fernschild v. Yuengling Brewing Co., 154 N. Y. 667, 49 N. E. 151. This transfer, therefore, in no way affects the alleged liability of the defendant in this action. The record fails to disclose any of the particulars connected with or growing out of the merger, except that it was under and pursuant to section 58 of the then stock corporation law. That section provided that:

"Any stock corporation lawfully owning all the stock of any other stock corporation [engaged in a similar business] may file in the office of the Secretary of State * * * a certificate of such ownership and of the resolution of its board of directors to merge such other corporation and thereupon it shall acquire and become and be possessed of all the estate, property, rights, privileges and franchises of such other corporation and they shall * * * be managed and controlled by the board of directors of such possessor corporation and in its name, but without prejudice to any liabilities of such other corporation or the rights of any creditor thereof."

The statute does not prescribe the manner in which creditors of the merged corporation may enforce their rights, and, so far as I have been able to discover, that question has not been judicially determined. The statute provides that the property of the merged corporation shall be held and enjoyed by the possessor corporation in its name, "but without prejudice to any liabilities of such other corporation or the rights of any creditor thereof." The words quoted simply preserve, as it seems to me, the rights of creditors as against the merged corporation, enabling them to maintain an action for the recovery of a judgment, and, if a recovery be had and the judgment not paid, then to take such proceedings as may seem proper for the recovery of assets transferred if full value were not paid therefor.

It seems to me quite clear that the possessor corporation does not by the merger alone assume the liabilities of the merged corporation so as to be liable in actions at law to its creditors. The fact that the New York Gas, Electric Light, Heat & Power Company owned all

of the stock of the Block Lighting & Power Company, which must be assumed since the merger was under section 58, did not render it liable for the debts of the latter company, and there is nothing in the statute to indicate that such an absolute liability was imposed upon it by the merger, irrespective of the assets which it may have acquired. What, if any, assets the New York Gas, Electric Light, Heat & Power Company received from the merged corporation does not appear. No attempt whatever was made upon the trial to show that either it or the defendant received any assets of the Block Lighting & Power Company or the Manhattan Lighting Company.

But is is urged that, when the Electric Light, Heat & Power Company was consolidated with the defendant, it thereupon, under section 12 of the business corporation law (chapter 691, Laws of 1892), became liable for the plaintiff's claim. This section as it then existed provides that:

"The rights of creditors of any corporation that shall so be consolidated shall not, in any manner be impaired nor any liability or obligation for the payment of any money due or to become due to any person or persons, or any claim or demand for any cause existing against any such corporation or against any stockholder thereof, be released or impaired by any such consolidation; but such new corporation shall succeed to and be held liable to pay and discharge all such debts and liabilities of each of the corporations consolidated in the same manner as if such new corporation had itself incurred the obligation or liability to pay such debt or damages. * * *"

This statute, while permitting corporations to consolidate, nevertheless preserves to the creditors of the corporations which are consolidated all their rights unimpaired, and furnishes them a remedy concurrent in its nature. They may enforce the liability either against the corporation whose debt it was, or against the new corporation, whose debt it has become by virtue of the statute. Matter of Utica National Brewing Co., 154 N. Y. 268, 48 N. E. 521; Gale v. Troy & Boston R. R. Co., 51 Hun, 470, 4 N. Y. Supp. 295.

But, if the view already expressed as to the effect of the merger of the Block Lighting & Power Company into the Gas, Electric Light, Heat & Power Company be correct, then this statute does not aid the plaintiff or make the defendant liable, because at the time the consolidation took effect the Gas, Electric Light, Heat & Power Company, so far as appears, was under no obligation to plaintiff to pay his claim or any claim of the Block Lighting & Power Company. The consolidation could not, in and of itself, impose any greater obligation than the corporation consolidated was under.

It is suggested that the Block Lighting & Power Company ceased to exist as an entity after the merger with the Gas Company. It is unnecessary to determine this question. If the Block Company as an entity continued to exist after the merger, then that entity was not, by the consolidation, taken into the defendant. If the entity of the Block Company were merged in the Gas Company, then it ceased to exist after the merger, and was not resurrected by the consolidation.

The judgment and order appealed from therefore should be affirmed, with costs.

INGRAHAM, P. J., and LAUGHLIN and MILLER, JJ., concur.

SCOTT, J. (dissenting). The plaintiff appeals from a judgment entered upon the dismissal of the complaint at Trial Term. The plaintiff's evidence, which was not contradicted, shows that in January, 1898, plaintiff's assignor, James Irvine, indorsed for the accommodation of a corporation known as the Block Lighting & Power Company No. 1, hereinafter called the Block Company, a promissory note of the New York Equipment Company. This note was not paid when due, and suit was brought upon it against the maker and the indorsers, including said James Irvine, with the result that judgment was entered against said Irvine on March 20, 1901. This judgment, or rather his share of it, Irvine paid in 1901, and before the commencement of the present action which is to recover the amount so paid with interest. In the meantime the Block Company had become absorbed by the defendant herein, the process by which this was effected being described as follows in an affidavit read in evidence on the trial, and accepted by both parties as proof of the facts therein stated: .

"That on the 13th day of December, 1898, a corporation known as the Block Lighting & Power Company No. 1, organized and existing under and by virtue of the laws of the state of New York, * * * by written conveyances transferred all of its property, real and personal, including its franchises, to a domestic corporation known as the Manhattan Lighting Company, which said bill of sale was duly recorded in the office of the register of the county of New York on the 20th day of December, 1898, in section 3 Liber 59 of Conveyances at page 360; * * * that thereafter the said the Block Lighting & Power Company No. 1, defendant herein, had no property, but its organization was continued up to the 1st day of February, 1900; * * * that on the 1st day of February, 1900, said Block Lighting & Power Company, No. 1, defendant herein, was duly merged into a domestic corporation known as the New York Gas & Electric Light, Heat & Power Company, under and pursuant to section 58 of the stock corporation law, and said certificate of merger was duly filed, * * * and that * * * on or about the 1st day of February, 1900, the corporation Manhattan Lighting Company was also duly merged into said corporation the New York Gas & Electric Light, Heat & Power Company, under and pursuant to section 58 of the stock corporation law, and said certificate of merger was duly filed; * * * that from said 1st day of February, 1900, to the 20th day of May, 1901, the said the New York Gas & Electric Light, Heat & Power Company conducted business and on said last-named date, to wit, on or about the 20th day of May, 1901, and before the commencement of this action, said last-named corporation was duly consolidated with a domestic corporation, to wit, the Edison Electric Illuminating Company of New York, pursuant to the statute in such case made and provided, forming the domestic corporation now existing, to wit, the New York Edison Company."

It will be observed that, until Irvine had been called upon to pay the judgment upon the note which he had indorsed for the benefit and accommodation of the Block Company, his claim against that company was entirely contingent and unenforceable, and did not ripen into an actual enforceable claim until a year or more after the foregoing merger and consolidation had been carried into effect. The contention on the part of the plaintiff is that, by reason of the foregoing merger and consolidation, the defendant has become liable for the obligations of the Block Company, which, as it is claimed, was necessarily included in the consolidation which resulted in the organiza-

tion of the defendant corporation. The defendant, on the other hand, contends that the only claim plaintiff or his assignor ever had was against the Block Company, that said company did not in consequence of the merger with the New York Gas & Electric Light, Heat & Power Company become a constituent part of the latter company, so as to be included in its later consolidation, but has throughout preserved its individuality so far as to sue and be sued, and that the only way in which a creditor of the Block Company can enforce his claim is to first secure a judgment against it, and then trace its assets (if he can) through the Manhattan Lighting Company and the New York Gas & Electric Light, Heat & Power Company into the hands of the present defendant.

The consolidation of the New York Gas & Electric Light, Heat & Power Company, hereafter called the New York Gas & Electric Company, and the Edison Electric Illuminating Company, was effected pursuant to subdivision 3 of section 61 of the transportations corporation law (Laws 1890, c. 566 [Consol. Laws 1909, c. 63]), which at the time of the consolidation read as follows:

"Any two or more corporations organized under this article or under any general or special law of the state for the purpose of carrying on any business which a corporation organized under this article might carry on, may consolidate such corporations into a single corporation by complying with the provisions of the business corporations law relating to the consolidation of business corporations."

An amendment of this section in 1909 (chapter 219) does not affect the present question. The provisions of the business corporation law referred to in the foregoing section included section 12 of chapter 961 of the business corporation law (now constituting section 11, chapter 4, of the Consolidated Laws), and reads as follows:

"The rights of creditors of any corporation that shall so be consolidated shall not in any manner be impaired, nor any liability or obligation for the payment of any money due or to become due to any person or persons, or any claim or demand for any cause existing against any such corporation or against any stockholder thereof be released or impaired by any such consolidation; but such new corporation shall succeed to and be held liable to pay and discharge all such debts and liabilities of each of the corporations consolidated in the same manner as if such new corporation had itself incurred the obligation or liability to pay such debt or damages and the stockholders of the respective corporations consolidated shall continue, subject to all the liabilities, claims and demands existing against them as such, at or before the consolidation; and no action or proceeding then pending before any court or tribunal in which any corporation that may be so consolidated is a party, or in which any stockholder is a party, shall abate or be discontinued by reason of such consolidation, but may be prosecuted to final judgment, as though no consolidation had been entered into; or such new corporation may be substituted as a party in place of any corporation so consolidated, by order of the court in which such action or proceeding may be pending."

The effect of a consolidation under these statutes is plainly expressed and well settled. The corporations which are consolidated cease to exist, except as they may be nominally continued, to enable claims against them to be prosecuted to judgment (Miner v. N. Y. Cen. & Hudson R. R. Co., 123 N. Y. 242, 25 N. E. 339; Copp v. Colorado

Coal & Iron Co., 29 Misc. Rep. 109, 60 N. Y. Supp. 293), and the consolidated company becomes liable for all the debts and liabilities of each of the constituent companies, irrespective of the amount of assets which the debtor constituent company may have contributed to the consolidation. Such is the plain language of the statute. Matter of Utica Nat. Brew. Co., 154 N. Y. 268, 48 N. E. 521. If, then, the Block Company, the original debtor, had prior to consolidation become an integral part of the New York Gas & Electric Company, so that it became, with said company, consolidated into the defendant corporation, the effect of the section last above quoted was to impose upon the consolidated company the obligations of the Block Company, including its then contingent obligations to plaintiff's assignor.

The statute under which the merger was affected was section 58 of the stock corporation law, added to the law in 1896 (Laws 1896, c. 932, now section 15, Consolidated Stock Corporation Law). At the time of the merger in question, it read as follows:

"Any stock corporation lawfully owning all the stock of any other stock corporation organized for, or engaged in business similar or incidental to that of the possessor corporation may file in the office of the Secretary of State, under its common seal, a certificate of such ownership, and of the resolution of its board of directors to merge such other corporation, and thereupon it shall acquire and become, and be possessed of all the estate, property, rights, privileges and franchises of such other corporation, and they shall vest in and be held and enjoy by it as fully and entirely and without charge or diminution as the same were before held and enjoyed by such other corporation, and be managed and controlled by the board of directors of such possessor corporation, and in its name, but without prejudice to any liabilities of such other corporation or the rights of any creditors thereof."

The question to be now considered is as to the precise effect of a merger under this statute. It clearly differs from consolidation under the statute above referred to, in that consolidation contemplates the obliteration of the consolidating corporations and the creation of a new corporation, whereas a merger contemplates the continuation of the merging, or, as it is termed in the statute, the possessor corporation. Another difference is that the merger statute does not in terms impose upon the merging or possessor corporation absolute liability or any liability at all for the liabilities and obligations of the merged corporation, even to the extent of the assets received upon the merger. The precise effect of such a merger upon the merged corporation has not been passed upon in this state, but in other jurisdictions it seems to be recognized that the merged corporation is extinguished, except in so far as the statute may keep it nominally alive for specified purposes. Cen. R. R. & Banking Co. v. Georgia, 92 U. S. 665, 23 L. Ed. 757; Railroad Co. v. Georgia, 98 U. S. 359, 25 L. Ed. 185; Adams v. Yazoo & M. V. R. Co., 77 Miss. 194, 24 South. 200, 317, 28 South. 956, 60 L. R. A. 33. And that it should be completely absorbed in the merging corporation is consistent with the meaning of the word merger as used by the lexicographers, who define the word as meaning an absorbtion or swallowing up so as to involve a loss of identity and individuality. Century Dictionary; New Oxford Dictionary. If the word "merger" was used in the statute

in this, its usual and natural, sense, and the Block Company became absorbed into and swallowed up by the New York Gas & Electric Company, it must follow that it became a constituent part of defendant the resultant of the consolidation of the absorbing company with the Edison Electric Illuminating Company so that the Block Company, or whatever remained of it after merger, became one of the consolidating companies, although not named in the articles of consolidation. In other words, the New York Gas & Electric Company, which was consolidated, consisted of that company as it was before the merger agreement, plus the Block Company, which had been merged into it, and the obligations of the Block Company, which had not been discharged, followed it into the consolidated company, and by force of the statute became obligations of the latter company. But it is said that by the terms of the merger statute the Block Company was kept alive for the purpose of being sued for its debts, and that the merging or possessor company never became liable for such debts or obligations, except perhaps in equity, after a judgment at law against the Block Company, and then only to the extent that assets of the Block Company could be traced. The basis for this contention is found in the fact that the merger statute does not in express terms impose upon the merging or possessor corporation liability for the debts and obligations of the merged corporation, and in the further fact that the section of the act authorizing a merger of corporations after providing that the assets, rights, and privilege of the merged corporation shall be enjoyed, managed, and controlled by the merging corporation, and in its name concludes with these words:

"But without prejudice to any liabilities of such other corporation or the rights of any creditors thereof."

So far as concerns the effect of the words last quoted, it is plain that they were inserted for the benefit of creditors of merged corporations, and are not to be so construed as to work to their disadvantage. It would seem that the Legislature realized that the effect of a merger would be to practically obliterate the merged corporation, and that the saving clause was included in the section to forestall any claim that the wiping out of the debtor had left the creditors remediless. It certainly was not intended to protect the merging company from any liabilities, which, but for the clause, would have been imposed upon it. The saving clause may therefore be disregarded in considering what liability, if any, attached to the merging company for the obligations of the merged company. The general trend of authority seems to be in favor of the view that the mere act of merger, as distinguished from consolidation, does not impose upon the merging or possessor corporation an absolute liability for the debts or obligations of the merged companies, not expressly assumed, except to the extent of the value of the assets acquired from said merged corporations (Fernschild v. Yuengling Brewing Company, 15 App. Div. 29, 44 N. Y. Supp. 106, affirmed 154 N. Y. 667, 49 N. E. 151; Klein v. E. River Electric Light Co., 182 N. Y. 27, 74 N. E. 495), but it has also been held that a transfer by one corporation to another which stripped the transferror of all its assets and

involved the destruction of the corporation and the abandonment of the business of its organization is illegal as to creditors whose rights are thereby sacrificed and their remedies destroyed (Cole v. Millerton Iron Company, 133 N. Y. 164, 30 N. E. 847, 28 Am. St. Rep. 615; Hurd v. N. Y. & Com. Laundry Co., 167 N. Y. 96, 60 N. E. 327). These cases are authority for the proposition that plaintiff's assignor, when the obligations of the Block Company to him had ripened into a liquidated claim, might have pursued the assets of the Block Company in the hands of the merging or possessor company, which, at least to the extent of such assets, would have become his debtor. This remedy was not open to him however, because, before his claim had so ripened, the defendant had been created by the consolidation and both the Block Company and its assignee, the New York Gas & Electric Company, had ceased to exist. There can be no claim that the New York Gas & Electric Company was a bona fide purchaser of the assets of the Block Company for value, because the admitted fact of a merger under the terms of the statute negatives any such possibility. The statement is that, after the Block Company had assigned its assets to the Manhattan Lighting Company, both of those companies were merged into the New York Gas & Electric Company. Before such a merger could have taken place, the latter company must, by the terms of the statute, have owned all the stock of the merging companies. Hence the New York Gas & Electric Company could not have paid, except perhaps in form, any consideration for the assets acquired pursuant to the merger, because the purchase price would have gone back into its own treasury as sole owner of all the stock. The transaction would have amounted to nothing more than taking money out of one pocket and putting it into another. We must assume, therefore, that the New York Gas & Electric Company acquired all the assets of the Block Company without the payment of any consideration therefor. This, then, was the situation when the defendant corporation was created by the consolidation of the Edison Electric Illuminating Company and the New York Gas & Electric Light, Heat, & Power Company. The latter had acquired, without consideration, all the assets of the Block Company, which had been merged into the New York Gas & Electric Company, and thus had been absorbed and its identity lost. By thus absorbing the Block Company and taking over all its assets, the New York Gas & Electric Company had rendered itself liable to the creditors of the Block Company, at least to the value of the assets so taken over. Having become and being thus indebted at the date of consolidation, the act providing for such consolidation comes into effect with the provision that:

"Such new corporation shall succeed to and be held liable to pay and discharge all such debts and liabilities of each of the corporations consolidated in the same manner as if· such new corporation had ·itself incurred the obligation or liability to pay such debt or damages."

If the Block Company, although merged into and absorbed by the New York Gas & Electric Company, is to be regarded as having retained, for any purpose whatever, its individual identity, it certainly must have been consolidated with the Edison Electric Illuminating

Company, when the New York Gas & Electric Company which had absorbed it, and into which it had been merged, was so consolidated. If so, it became one of the "corporations consolidated" as they are termed in the statute, and the consolidated company succeeded to liability for its debts.

Such a construction of the statute will impose no hardship upon corporations seeking to merge or consolidate, for it will always be easy for them, before entering into a merger or consolidation, to ascertain the liabilities they may assume by doing so. A contrary construction might be extremely hard upon creditors, as is well illustrated by the present case. During all the time that the series of assignments, mergers, and consolidations were going on, the claim of plaintiff's assignor against the Block Company was merely contingent, and he was powerless to do anything at all to protect himself. When his claim had ripened and he was in a position to seek to recover it, he found that his original creditor had disappeared after one merger and one consolidation; that the creditor's assets had passed through three hands, and had been commingled first with the assets of the New York Gas & Electric Company, and then with those of the defendant, and the best remedy that is offered him is that he shall first obtain a judgment at law against the defunct and assetless Block Company, and then trace, if he can, some part of the assets of that company in the hands of the defendant. His prospects of an ultimate satisfaction of his debt would not be flattering. It was, as I think, to prevent precisely such an injustice as this that the statute imposed upon a consolidated company an absolute liability for all the debts of each of the consolidating companies, irrespective of the amount of assets that such consolidating companies contributed.

The judgment should be reversed, and a new trial granted.