Frank ABNEY a/k/a Khali, Gary Feldman, Kerry Flaherty, Harold Jones, and Wayne Nelson, on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

Benjamin WARD, Commissioner of the New York State Department of Correctional Services, and Jack Czarnetzky, Superintendent of Eastern Correctional Facility, Napanoch, New York, Individually and in their official capacities, Defendants.

No. 77 CIV. 3896 (MP).

United States District Court, S. D. New York.

Nov. 15, 1977.

Prisoners' Legal Services of New York for plaintiffs; by Susan N. Herman, New York City.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, by Margery Evans Reifler, Asst. Atty. Gen., New York City, for defendants.

## DECISION

POLLACK, District Judge.

Defendants have moved for an award of attorney's fees, to be paid by the attorneys for the plaintiffs. The motion suggests that plaintiffs' attorneys acted vexatiously, wantonly or for oppressive reasons in seeking emergency injunctive relief on behalf of the plaintiffs, without any semblance of reasonable grounds therefor, and without even the plaintiffs' knowledge that such action was taken in their names and on their behalf. The fees are sought from plaintiffs' attorneys rather than plaintiffs, on the ground that plaintiffs were unaware of the action taken by their putative counsel.

In the underlying action, Prisoners' Legal Services (PLS), purporting to represent prisoners in New York's Eastern Correctional Facility (Eastern), sought an injunction to prevent state officials from questioning the inmates, allegedly in violation of their constitutional right to counsel. On August 8, 1977 a disturbance had occurred at Eastern. Agents of the State Police, the Inspector General's Office of the Department of Correctional Services, and the Commission of Correctional Services proceeded to Eastern to investigate. PLS, on the notion that prison disturbances historically give rise to serious violations of inmates' rights, notified counsel for the Department of Correctional Services on August 9 that it was commencing this action. On the same day, a PLS attorney presented a letter to the State Police advising them that PLS represented a long list of Eastern inmates, requesting that PLS be advised before any of the inmates were interrogated, and stating that they should not be questioned unless a PLS attorney was present. According to the defendants, the State Police agreed to this request. They also informed the PLS attorney that no inmates suspected of criminal activity had yet been questioned, and that *Miranda* warnings would be given before any such questioning. PLS disputes the existence of such an agreement. That afternoon, other PLS attorneys presented an application to this Court (Judge Goettel) for an order to show cause why the defendants should not be enjoined from (1) denying inmates the right to consult with and receive visits from counsel on the same basis as was permitted before the disturbance, and (2) interrogating or permitting interrogation of inmates unless they were advised of their right to and given an opportunity to consult with counsel. A temporary restraining order, providing relief in identical terms on an interim basis, was also sought.

When the parties appeared before Judge Goettel, counsel for the defendants was directed to ascertain the situation at Eastern, and both sides were told to return the next day, August 10. The fee for the hours which defendants' counsel spent preparing for the hearing of the tenth are the subject of this motion.

Defense counsel learned of the discussion between the PLS representative and the State Police during her preparation, and called the matter to the Court's attention at the hearing. Plaintiffs then withdrew that part of their motion which sought to have defendants restrained from questioning the prisoners until they were given an opportunity to consult with their attorneys. The Court denied the remainder of the application for a temporary restraining order, holding "that [the plaintiffs] do not have the right to counsel in prison investigations that they are attempting to claim." However, the Judge signed the order to show cause why a preliminary injunction should not issue, returnable August 12. The motion was subsequently adjourned to August 16, at which time plaintiffs filed a notice of voluntary dismissal of the suit.

The defendants contend that the application for an order to show cause and temporary restraining order was unwarranted and frivolous because:

(1) PLS had no grounds for believing inmates' rights were being violated;

(2) PLS should have known that the part of its application seeking an injunction against interrogations unless inmates were advised of their right to and given an opportunity to consult with counsel was mooted by the discussion and arrangement between the lawyer connected with PLS and the State Police; and (3) The application was frivolous as a matter of law because the inmates had an adequate legal remedy for violations of their right to counsel in connection with criminal prosecutions, under the exclusionary rule; because the inmates had no right to counsel except in connection with criminal investigations; and because the applicable rules of law were obvious.

PLS contends that the application for emergency relief was not frivolous because:

(1) PLS had grounds to believe inmates' rights were being violated;

(2) The discussion between the PLS attorney and the State Police did not moot any part of the application and in any event the associate attorneys of PLS who presented the application to the Court could not have known of the discussion at that time; and

(3) Although the inmates would have had an adequate legal remedy with respect to interrogations in violation of their right to counsel in connection with criminal prosecutions, they would not have had an adequate legal remedy if uncounseled confessions were used in connection with prison disciplinary proceedings.

The defendants contend that insofar as PLS pursued claims on which the Supreme Court and the Second Circuit had ruled squarely against them; pursued an aspect of the case when it was already moot, and this information was available to them from one of their own associates but was not obtained due to their own carelessness; and failed to inform the Court and opposing counsel of the possibility of mootness, they should be liable for attorneys' fees occasioned to the defendants.

Under the traditional American Rule, courts ordinarily refrain from allowing attorneys' fees in addition to statutory costs, 28 U.S.C. §§ 1914, 1920, 1923, 1927, unless it is determined that Congress so intended. There are, of course, exceptions which are "assertions of inherent power in the courts to allow attorneys' fees in particular situations, unless forbidden by Congress . . ." *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 259, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). Examples of such exceptions are allowances for willful violations of a court order, *Toledo Scale Co. v. Computing Scale Co.,* 261 U.S. 399, 426–28, 43 S.Ct. 458, 67 L.Ed. 719 (1923), and where the successful litigants have created a common fund for recovery or extended a substantial benefit to a class, *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 391–92, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885); *Trustees v. Greenough,* 105 U.S. 527, 532–37, 26 L.Ed. 1157 (1882).

Awards of attorneys' fees for bad faith or frivolous applications have been made in several types of cases. When a defendant has forced the bringing of an unnecessary action by his unreasonable obstinacy, the courts have not hesitated to award attorneys' fees. *E. g., Class v. Norton,* 505 F.2d 123, 127 (2d Cir. 1974); *Stolberg v. Members of Board of Trustees,* 474 F.2d 485, 490 (2d Cir. 1973). The respondent may be entitled to attorneys' fees when a party makes a frivolous and groundless motion. *E. g., Undersea Engineering & Construction Co. v. ITT,* 429 F.2d 543, 545 (9th Cir. 1970); *Local 149, UAW v. American Brake Shoe Co.,* 298 F.2d 212, 214–15 (4th Cir.), *cert. denied,* 369 U.S. 873, 82 S.Ct. 1142, 8 L.Ed.2d 276 (1962) (dictum). Recently, the Second Circuit assessed double costs against an attorney who knowingly presented the Court with a frivolous petition to review a client's deportation order. *Acevedo v. INS,* 538 F.2d 918 (2d Cir. 1976).

■ On occasion, counsel who present applications on behalf of claimants asserting interference with fundamental rights have been thought to use individuals as pawns to promulgate counsel's personal social viewpoints in the absence of justiciable contro-

versies. It may well be that some form of supervision and control of the professional conduct of such champions of the public interest is needed to contain misplaced ardor. However, this should not be attempted in the first instance through court-imposed sanctions unless the need therefor rises to the level of action taken in bad faith, vexatiously, wantonly or for oppressive reasons. *See F. D. Rich Co., Inc. v. United States for Use of Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974).

The motivations and intent of PLS in the instant case are not so clear as to require more than cautionary notice to PLS for the future. On the record herein the Court has insufficient evidence on which to find that PLS acted wantonly or for oppressive reasons, or intended to be vexatious in starting and stopping this litigation in the manner it did. Accordingly, the *motion for* imposition of attorney's fees against PLS is denied.

SO ORDERED.